[No. C051469. Third Dist. Jan. 23, 2007.]

RANDY VERGOS, Plaintiff and Respondent, v.
JULIE McNEAL, Defendant and Appellant.

## COUNSEL

Porter, Scott, Weiberg & Delehant, Brendan J. Begley, Michael W. Pott and George A. Acero for Defendant and Appellant.

Law Office of Geraldine Armendariz, Geraldine Armendariz; Law Office of James A. Michel and James A. Michel for Plaintiff and Respondent.

OPINION

**SIMS, Acting P. J.**—Plaintiff Randy Vergos, who alleges he was sexually harassed in his employment at the University of California at Davis (UCD), filed a civil rights claim against the manager who denied his administrative grievances—defendant Julie McNeal (acting director of UCD's facilities services department[1]). McNeal appeals from the trial court's order denying her motion to strike plaintiff's third cause of action (alleging violation of civil rights) as a "strategic lawsuit against public participation" (SLAPP) under Code of Civil Procedure section 425.16.[2] McNeal contends her statements and conduct as a hearing officer denying plaintiff's grievances are protected by the anti-SLAPP statute. We agree and shall reverse the order and remand to the trial court to determine an award of attorney's fees for McNeal.[3]

## FACTUAL AND PROCEDURAL BACKGROUND

On September 19, 2002, plaintiff filed a complaint against McNeal, Allen Tollefson, and the Regents of the University of California (the Regents). Tollefson and the Regents are not parties to this appeal. The operative first amended complaint (filed Oct. 17, 2002) alleged (1) sexual harassment, as against all defendants, (2) negligent hiring, supervision and training, as against the Regents, and (3) violation of civil rights, as against all defendants. Plaintiff also sought punitive damages.

The complaint alleged McNeal was "an employee, agent, and manager for the Defendant Regents at [UCD]. McNeal is sued in her individual capacity. McNeal is the Director, Operations and Maintenance for [UCD] and has responsibility for the management of an estimated $50 million annually in construction and maintenance projects at [UCD] and overall supervision of an estimated 500 employees. McNeal is Tollefson's immediate supervisor. A political appointee, prior to her designation by the Regents as Director,

---

[1] McNeal says she was acting director; others say she was director. For our purposes, it does not matter.

[2] Undesignated statutory references are to the Code of Civil Procedure. Section 425.16, subdivision (b), states: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim. [¶] (2) In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(1), (2).)

[3] McNeal moved to strike only the third cause of action (civil rights violation). Section 425.16 (see fn. 2, *ante*) allows a motion to strike "a cause of action." We explain, *post*, that we reject plaintiff's attempt to avoid the striking of the third cause of action by connecting it to the first cause of action alleging sexual harassment as against "All defendants."

Operations and Maintenance in 1991 McNeal had no managerial or supervisory experience or familiarity with the management of large budgets, construction projects, or work crews, and no training or experience as a fair and impartial hearing officer for employee grievances."

The general allegations asserted as follows: Plaintiff was employed by UCD as an inspector, planner and estimator, and on "several occasions during the year last past" was sexually harassed by his supervisor, Allen Tollefson. On February 11, 2002, and March 4, 2002, plaintiff filed grievances, and the Regents assigned an investigator, who allegedly verified from other employees that Tollefson referred to plaintiff as "my boy toy" and "my bitch." In July 2002, McNeal, who was director of operations and maintenance for UCD, and who was also Tollefson's supervisor, acted as the hearing officer and managing agent for the Regents in the matter of plaintiff's grievances. McNeal denied the grievances and wrote to plaintiff that it was "more likely" that the allegations of excessive controlling behavior, verbal threats and sexual harassment did not occur. McNeal refused to recognize the substance of plaintiff's grievances or to take effective action to prevent recurrence of Tollefson's conduct or to protect plaintiff from future unwelcome contact with Tollefson. The complaint alleged McNeal was being sued in her individual capacity. The complaint alleged plaintiff had filed a complaint with the Department of Fair Employment and Housing on October 9, 2002, and was awaiting a right-to-sue letter.

The first count alleged sexual harassment as against "All defendants," but did not make any specific allegation against McNeal. It alleged Tollefson harassed plaintiff, and the Regents had an obligation to prevent sexual harassment after another employee complained about Tollefson in 2001.

The second count alleged negligent hiring, supervision and training as against the Regents.

The third count incorporated by reference the other allegations and alleged violation of civil rights as against all defendants. The third count alleged:

"33. In hearing, processing, and deciding the grievances alleged in paragraphs 20 and 21, Julie McNeal and other employees of the Regents were acting as managers and agents for the Regents under the Personnel Policy and the color of state law.

"34. The denial of plaintiff's grievances against Tollefson's conduct as alleged denied plaintiff the benefit and protection of his federal statutory and constitutional right to be free of sexual harassment, discrimination and retaliation.[4]

"35. The Personnel Policy contains no written provision that grievances filed by employees of [UCD] shall be heard by a fair and impartial hearing officer thereby perpetuating a long standing and persistent pattern, practice, and custom of the Regents to deny employee grievances in which grieving parties have alleged sexual discrimination, harassment, or retaliation by supervisors and managers.

"36. The Regents do not provide training for McNeal as a hearing officer to hear and decide grievances under the Personnel Policy."

On August 5, 2005, McNeal filed a section 425.16 special motion to strike the third cause of action (the civil rights violation) as a SLAPP, because it accused McNeal of conduct (hearing, processing, and deciding plaintiff's workplace grievances) that arose from alleged activities "in furtherance of her right of petition or free speech." The motion further argued plaintiff could not show a likelihood of success so as to avoid a section 425.16 dismissal (in part because he failed to exhaust internal administrative remedies).

McNeal's attorneys submitted declarations explaining why the anti-SLAPP motion was not filed until almost three years after the complaint was filed.

McNeal submitted a declaration attesting that, in handling plaintiff's grievances, she followed the procedures set forth in the statewide Regents' Personnel Policies for Staff Members and the local implementing procedures (collectively, PPSM). Section 70 of the PPSM permitted an employee such as plaintiff to file an employee complaint form with the human resources department and seek a remedy for employee grievances. Step I of the section 70 process was reviewed by the department head, who could delegate investigation to an appropriate individual. If the complainant was not satisfied with the step I response, he could appeal it for step II review. An employee and labor relations (ELR) analyst would determine if the appeal was eligible for step II review, in which case a complaint resolution officer would be appointed and would convene a meeting with the complainant and others to

---

[4] In interrogatory responses, plaintiff said (1) the statutory basis for his civil rights claim was "section 1983 U.S.C." (presumably tit. 42), and (2) the federal statutory or constitutional provisions to which he referred in paragraph 34 of the complaint were "Title VII Civil Rights Act of 1964 (42 U.S.C. § 2000e–2000e-17; XIV Amendment U.S. Constitution." Federal civil rights claims brought in California state courts are subject to section 425.16 motions. (*Bradbury v. Superior Court* (1996) 49 Cal.App.4th 1108, 1117–1118 [57 Cal.Rptr.2d 207].)

obtain information and respond to the complaint. Some types of grievances could be appealed to a third step, in which a step III hearing officer would hold an evidentiary hearing and issue a decision.[5]

McNeal attested that plaintiff filed complaints pursuant to PPSM section 70 on February 11 and March 4, 2002, accusing Tollefson of sexual harassment. These grievances were assigned to McNeal as department head. ELR analyst Dan Grey was assigned to investigate the complaints and prepare a report for McNeal's review. Grey reported that plaintiff's claims were unsubstantiated by the evidence. McNeal had no reason to believe Grey harbored any unlawful prejudice against plaintiff, and McNeal herself did not harbor any unlawful prejudice against plaintiff. McNeal reviewed Grey's report, found it to be adequate, and agreed with its conclusions. She accordingly found plaintiff's complaints to be without merit and so notified him. McNeal attested, "To my knowledge, [plaintiff] did not appeal this decision to the next step in PPSM Section 70 process."

Plaintiff opposed the anti-SLAPP motion. He submitted various declarations, parts of which were excluded by the trial court's sustaining of some of McNeal's evidentiary objections.[6] The parties do not challenge the evidentiary rulings on appeal. The admitted portions of the declarations include UCD senior superintendent Leslie Nopp's declaration asserting that McNeal took it upon herself to be the person to review plaintiff's grievance concerning Tollefson.[7] Plaintiff's declaration in the joint appendix on appeal is unsigned (a point not noted by the parties). In any event the trial court sustained evidentiary objections to paragraph 5 (in which plaintiff described

---

[5] We observe McNeal did not describe the criteria for eligibility of step II or step III review (other than to give one example of eligibility for step III review—a claim of retaliation for having engaged in the section 70 process), nor did she attest that plaintiff's grievances were eligible. She simply attested plaintiff did not appeal her decision to the next step in the PPSM section 70 process. Plaintiff does not contend his grievances were ineligible for step II or step III review and does not dispute that he did not exhaust all steps of the section 70 process. We assume that alleged bias of a step I decision maker would constitute grounds for step II and/or step III review.

[6] In ruling on an anti-SLAPP motion, the trial court considers only evidence that would be admissible at trial. (*Mattel, Inc. v. Luce, Forward, Hamilton & Scripps* (2002) 99 Cal.App.4th 1179, 1188 [121 Cal.Rptr.2d 794]; *Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1497 [45 Cal.Rptr.2d 624]; *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 830 [33 Cal.Rptr.2d 446].)

[7] The trial court expressly sustained an evidentiary objection to Nopp's statement that "all other grievances were handled by mid-level supervisors," because it was not supported by facts from which the court could conclude there was a high probability that Nopp could establish a proper foundation for this statement at trial. The court did not expressly exclude the redundant remainder of the sentence—that "grievances never went to the Director level," but we believe exclusion was necessarily implied by exclusion of the first part of the sentence. The trial court also sustained objections to unspecified portions of specified paragraphs of Nopp's declaration "[t]o the extent that the statements . . . are based on hearsay."

alleged incidents of harassment by Tollefson) on the grounds it conflicted with plaintiff's interrogatory answers. Plaintiff's interrogatory answers said Tollefson followed plaintiff around, sometimes came up behind him, stared at plaintiff's hair and body, made comments about the penises of other men, said one man had pretty lips, tugged at his own (Tollefson's) crotch, and got angry when plaintiff refused to move into Tollefson's office. Plaintiff's interrogatory answers also said UCD policy does not require a hearing officer to be fair or impartial.

On November 22, 2005, the trial court issued an order denying McNeal's anti-SLAPP motion. The court first determined there was good cause for McNeal's delay in filing the motion. As to the court's denial of McNeal's motion to strike the third cause of action (civil rights claim), the trial court said, "Defendant [McNeal] has not shown that . . . section 425.16 applies to Plaintiff's third cause of action. The gravamen of Plaintiff's third cause of action is Defendant's hearing, processing and deciding of Plaintiff's grievances. [Citation to complaint.] Plaintiff's third cause of action is not based on the content of what Defendant stated in any proceeding or the exercise of the right to petition. [Citation.]" The trial court also ruled on evidentiary objections.

McNeal appeals.

## DISCUSSION

### I. *Appealability and Standard of Review*

An order denying a section 425.16 motion is an appealable order. (§§ 425.16, subd. (i), 904.1, subd. (a)(13).)

On appeal, we first independently determine whether the defendant has made a threshold showing that the cause of action triggers the statute. If the cause of action triggers the statute, we then independently consider whether the plaintiff has demonstrated a probability of prevailing on the claim. (*Olaes v. Nationwide Mutual Ins. Co.* (2006) 135 Cal.App.4th 1501, 1505 [38 Cal.Rptr.3d 467].)

### II. *Cause of Action Triggers Section 425.16*

McNeal argues her statements and communicative conduct in handling plaintiff's grievances (which are the gravamen of plaintiff's civil rights claim against her) are protected by section 425.16, because they (1) were connected with an issue under review by an official proceeding authorized by law, and (2) furthered the right to petition of plaintiff and similarly situated employees. We agree.

■ We begin with the legislative mandate to construe section 425.16 broadly. Thus, section 425.16, subdivision (a), states: "The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly."

Section 425.16, subdivision (e), provides: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) *any written or oral statement or writing made in connection with an issue under consideration or review by* a legislative, executive, or judicial body, or *any other official proceeding authorized by law*; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Italics added.)

The case before us involves subdivision (e)(2) of section 425.16 (statement or writing made in connection with an issue under review in an official proceeding authorized by law).

■ Subdivision (e)(1) and (2) of section 425.16 does not require the defendant to show a public issue or issue of public interest. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1116–1117, 1123 [81 Cal.Rptr.2d 471, 969 P.2d 564].) These first two clauses " 'safeguard free speech and petition conduct aimed at advancing self government, as well as conduct aimed at more mundane pursuits. Under the plain terms of the statute it is the context or setting itself that makes the issue a public issue: all that matters is that the First Amendment activity take place in an official proceeding or be made in connection with an issue being reviewed by an official proceeding.' " (*Briggs, supra*, 19 Cal.4th at p. 1116; but see *Flatley v. Mauro* (2006) 39 Cal.4th 299 [46 Cal.Rptr.3d 606, 139 P.3d 2] [§ 425.16 does not apply to speech or activity that is illegal as a matter of law].)

As we have mentioned, this case involves subdivision (e)(2) of section 425.16 (statement or writing made in connection with an issue under review in an official proceeding authorized by law).

Thus, McNeal reviewed plaintiff's grievances pursuant to the PPSM, which was established by the Regents, which is a constitutional entity having quasi-judicial powers. (Cal. Const., art. IX, § 9; *Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 319–321 [25 Cal.Rptr.3d 320, 106 P.3d 976].) The Regents "have rulemaking and policymaking power in regard to the University; their policies and procedures have the force and effect of statute." (*Kim v. Regents of University of California* (2000) 80 Cal.App.4th 160, 165 [95 Cal.Rptr.2d 10].) Statutory hearing procedures qualify as official proceedings authorized by law for § 425.16 purposes. (E.g., *Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192 [46 Cal.Rptr.3d 41, 138 P.3d 193] (*Kibler*) [hospital peer review procedure qualified as official proceeding under § 425.16 because procedure was required by Bus. & Prof. Code statutes].)[8]

Plaintiff argues his third cause of action against McNeal does not "arise from" McNeal's conduct or writings. He says he did not target McNeal as a quasi-judicial officer for her written decision on his grievance, but rather as a defendant for her participation in aiding and abetting Tollefson's harassment of plaintiff. However, plaintiff's argument ignores his own pleading, the third count of which complained of McNeal's "hearing, processing, and deciding [his] grievances." That the third count of the complaint incorporated by reference the preceding allegations of the complaint (including the first count's allegations against all defendants for sexual harassment) does not help plaintiff. (*Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 414 [9 Cal.Rptr.3d 242] [plaintiff may not immunize a cause of action challenging petitioning activity from a § 425.16 motion by the artifice of including extraneous allegations concerning nonprotected activity].) Plaintiff fails to point to any allegation of any aiding and abetting conduct by McNeal, other than her hearing, processing, and deciding his grievances. His respondent's brief on appeal says he named McNeal "as an individual defendant in his First and Third Causes of Action for direct supervisor liability under FEHA [Government Code section 12940 et seq.] as an aider and abettor pursuant to the holding in *Fiol v. Doellstedt* (1996) 50 Cal.App.4th 1318 [58 Cal.Rptr.2d 308]." However, *Fiol* said that supervisory employees should not be placed at risk of personal liability for personnel management decisions which have been delegated to the supervisor by the employer, such as

---

[8] In *Olaes v. Nationwide Mutual Ins. Co., supra*, 135 Cal.App.4th 1501, we recently held a *private* company's sexual harassment grievance protocol did not constitute an official proceeding authorized by law. *Olaes* is obviously distinguishable since, as we have explained, the Regents' protocol is equivalent to a state statute.

deciding whether to take action on a complaint of sexual harassment. (*Fiol, supra*, 50 Cal.App.4th at pp. 1327–1328.) Moreover, in interrogatory responses, plaintiff did not cite the FEHA (Fair Employment and Housing Act) when asked to identify the statutory bases for his civil rights cause of action. He cited only federal civil rights statutes and the Fourteenth Amendment. Plaintiff points to the declaration he submitted from Leslie Nopp, stating that McNeal was not known to have reviewed any other grievance but took it upon herself to review plaintiff's grievances. Plaintiff claims McNeal thereby furthered Tollefson's conduct which created a hostile work environment for plaintiff. However, Nopp declared: "I am informed and believe that Julie McNeal never reviewed any other grievance besides [plaintiff's] grievances concerning Tollefson." This statement on information and belief does not constitute admissible evidence (*Evans v. Unkow, supra*, 38 Cal.App.4th at p. 1497) and would fall within the hearsay statements excluded by the trial court. We therefore disregard plaintiff's implication that McNeal's hearing, processing, and deciding of his grievances constituted aiding and abetting Tollefson's alleged sexual harassment of plaintiff.

In denying the section 425.16 motion, the trial court in this case said plaintiff's third cause of action was based on McNeal's conduct and not on the content of what she stated in any proceeding or in the exercise of the right to petition. We disagree. The gravamen of plaintiff's third cause of action is McNeal's communicative conduct in denying plaintiff's grievances. The hearing, processing, and deciding of the grievances (as alleged in the complaint) are meaningless without a communication of the adverse results. We need not address McNeal's argument that section 425.16 also applies to noncommunicative conduct.

The trial court cited *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343 [22 Cal.Rptr.3d 724] (*San Ramon*). However, that case is not controlling. In *San Ramon*, a fire district sought mandamus relief after a county retirement board decided to increase contributions payable by the fire district and/or its employees. (*Id.* at p. 347.) The First Appellate District upheld the trial court's denial of an anti-SLAPP motion. The introduction to the opinion states: "This case requires us to decide whether litigation seeking judicial review of an action or decision by a public entity is subject to a special motion to strike under the anti-SLAPP statute . . . merely because the challenged action or decision was taken by vote after discussion at a public meeting. Our answer is no. Even if the conduct of individual public officials in discussing and voting on a public entity's action or decision could constitute an exercise of rights protected under the anti-SLAPP statute—*an issue we need not and do not reach*—this does not mean that litigation challenging a public entity's

action or decision always arises from protected activity. In the present case, the litigation does not arise from the speech or votes of public officials, but rather from an action taken by the public entity administered by those officials. Moreover, that action was not itself an exercise of the public entity's right of free speech or petition. We therefore affirm the trial court's order denying the entity's special motion to strike." (*Id.* at pp. 346–347, italics added, citation & fn. omitted.) *San Ramon* went on to say, "although we need not and do not reach the issue here because no individual Board member was sued by the District, we note that there is support for the argument that the protection accorded by the anti-SLAPP statute extends to statements made by public officials at an official public meeting, and perhaps also to their votes. [Citations.]" (*Id.* at p. 353.) *San Ramon* noted that nothing about the board's action (increasing pension contributions) implicated the rights of free speech or petition. (*Ibid.*)

Thus, even assuming *San Ramon* is correctly decided, the case did not decide the issue presented in this appeal. Plaintiff argues *San Ramon* is nevertheless controlling, because it recognized that government bodies may invoke section 425.16 where appropriate, just like any private litigant, and its holding was based on the conclusion that the board's act did not implicate free speech or the right to petition. However, *San Ramon* expressly stated it was not deciding the issue of suits against individuals. Cases are not authority for propositions not considered. (*People v. Barragan* (2004) 32 Cal.4th 236, 243 [9 Cal.Rptr.3d 76, 83 P.3d 480].) Moreover, in observing in dictum that support exists for applying section 425.16 to statements made by public officials at official public meetings, *San Ramon* cited *Schroeder v. Irvine City Council* (2002) 97 Cal.App.4th 174, 183, footnote 3 [118 Cal.Rptr.2d 330], which noted in dictum that insofar as the lawsuit targeted city council members, the basis for their liability was premised on their votes in favor of adopting a voter participation program, and voting is conduct qualifying for First Amendment protections. Plaintiff argues *Schroeder* is distinguishable because he is not suing McNeal due to any speech or petition, but for aiding and abetting a harassing supervisor. We have already rejected plaintiff's aiding and abetting theory.

Here, unlike *San Ramon*, we *do* deal with a lawsuit against an individual public employee. Moreover, we are mindful of our mandate to construe section 425.16 broadly. We agree with McNeal that a narrow reading of the statute in plaintiff's favor could result in public employees' reluctance to assume the role of hearing officer in such cases, and thus thwart the petitioning activities of employees with grievances. In concluding that hospital peer review proceedings are official proceedings within the meaning of section 425.16, the Supreme Court in *Kibler, supra,* 39 Cal.4th at page 201,

observed that to hold otherwise would discourage physicians from participating in peer review committees. *Kibler* is not necessarily on point, because it noted physician participation is voluntary and unpaid, whereas in our case the handling of step-I section 70 claims appears to be part of the job description of managerial employees (though McNeal argues a decision in her favor in this case would encourage public employees to volunteer to help mediate workplace disputes). In any event, the purpose of section 425.16 is best served by applying it to all individual participants in the official proceeding, including the decision maker.

We conclude the third cause of action triggered section 425.16, subdivision (e)(2), i.e., "any written or oral statement or writing made in connection with an issue under consideration or review by . . . any other official proceeding authorized by law."

■ We also agree with McNeal that she acted in furtherance of the right to petition within the meaning of section 425.16, even though it was not her own right to petition at stake. Section 425.16 "does not require that a defendant moving to strike under section 425.16 demonstrate that its protected statements or writings were made *on its own behalf* (rather than, for example, on behalf of its clients or the general public)." (*Briggs v. Eden Council for Hope & Opportunity, supra*, 19 Cal.4th at p. 1116 [statute applied to nonprofit provider of tenant counseling services]; see also *Mission Oaks Ranch, Ltd. v. County of Santa Barbara* (1998) 65 Cal.App.4th 713, 718, 728 [77 Cal.Rptr.2d 1] (*Mission Oaks*)[9] [§ 425.16 protected independent environmental consultant, hired by the county, who prepared environmental impact report for required public hearings concerning potential development of projects]; *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1418–1420 [103 Cal.Rptr.2d 174] [§ 425.16 protected attorney who furthered the petition rights of a client].) As noted in McNeal's reply brief, the statute has also been applied to witness statements in response to subpoenas. (*Greka Integrated, Inc. v. Lowrey* (2005) 133 Cal.App.4th 1572, 1580 [35 Cal.Rptr.3d 684].)

■ Plaintiff argues application of section 425.16 should be limited only to persons, such as lawyers, who support another person's petition rights, and should not extend to hearing officers because such a blanket application would necessarily require extension of the statute to protect tortfeasors on the basis that the tortfeasor provides a ground for a tort victim to petition for redress. We disagree. Hearing officers in an official proceeding deserve the protection of the anti-SLAPP statute.

---

[9] *Mission Oaks* was disapproved on other grounds in *Briggs v. Eden Council for Hope & Opportunity, supra*, 19 Cal.4th at page 1123, footnote 10.

Plaintiff argues McNeal was not acting in furtherance of the right to petition because her conduct, by her own description, appears to have been nothing more than a ministerial act in reviewing and accepting the investigator's report. We disagree. By McNeal's description, she exercised discretion in determining plaintiff's grievances.

Plaintiff cites *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, pages 76 through 77 [124 Cal.Rptr.2d 519, 52 P.3d 695], which said the mere fact an action is filed after protected activity took place does not mean it *arose from* that activity within the meaning of section 425.16, subdivision (b) (fn. 2, *ante*). *Cotati* held an anti-SLAPP motion should not have been granted in a state court declaratory relief action filed in response to a federal declaratory relief action between the same parties, raising the same issues (owners of mobilehome parks challenging the city's enactment of an ordinance creating a mobilehome park rent stabilization program). *Cotati* reasoned that the state court action arose from the underlying controversy that had prompted the federal litigation, rather than from the filing of the federal litigation itself, and thus did not fall within the scope of section 425.16. (29 Cal.4th at pp. 74, 80.)

Here, plaintiff's third cause of action arose from McNeal's denial of plaintiff's grievances under the PPSM. Thus, *Cotati* does not help plaintiff.

We conclude section 425.16 applies to the third cause of action. We now turn to the question whether plaintiff showed a probability of prevailing on the claim. (*Olaes v. Nationwide Mutual Ins. Co., supra*, 135 Cal.App.4th at p. 1505.)

III. *Probability of Plaintiff Prevailing*

McNeal argues plaintiff failed to show a probability of prevailing on the civil rights claim so as to avoid the striking of the claim under section 425.16. We agree.

■ When a defendant makes a threshold showing that a cause of action arises from speech or conduct protected under section 425.16, the burden shifts to the plaintiff to show a probability of prevailing on the merits at trial. (§ 425.16, subd. (b); *Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 [124 Cal.Rptr.2d 530, 52 P.3d 703].) The plaintiff must show the complaint is legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment at trial. (*Navellier, supra*, 29 Cal.4th at p. 93.) Similar to evidentiary showings in summary judgment motions, the evidence

presented must be admissible. (*Mattel, Inc. v. Luce, Forward, Hamilton & Scripps, supra*, 99 Cal.App.4th at p. 1188; *Evans v. Unkow, supra*, 38 Cal.App.4th at p. 1497; *Wilcox v. Superior Court, supra*, 27 Cal.App.4th at p. 830.) Our review is de novo. (*Olaes v. Nationwide Mutual Ins. Co., supra*, 135 Cal.App.4th at p. 1505.)

McNeal says a split of authority exists as to who bears the burden regarding affirmative defenses in the section 425.16 query concerning probability of prevailing on the merits. Our resolution of this appeal does not require us to engage in this debate.

Here, even assuming for the sake of argument that Tollefson's alleged misconduct rose to an actionable level, plaintiff failed to show a probability of prevailing in his civil rights claim against McNeal.

Thus, plaintiff's complaint did not specify the basis for the civil rights claim but merely alleged McNeal's denial of his grievances "denied [him] the benefit and protection of his federal statutory and constitutional right to be free of sexual harassment, discrimination and retaliation." Plaintiff's interrogatory responses said (somewhat ambiguously) that the civil rights claim in his complaint "relied on" title 42 United States Code section 1983 (42 U.S.C. section 1983) but "referred to" title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.).

In the trial court and on appeal, plaintiff has characterized his civil rights claim as a FEHA claim and has ignored 42 U.S.C. section 1983 and title VII. However, we have seen that plaintiff's third count did not present a FEHA claim.[10]

■ As to title VII, McNeal says title VII (which prohibits employment discrimination, including sexual harassment) imposes liability only on employers, not on employees. (*Miller v. Maxwell's Intern. Inc.* (9th Cir. 1993) 991 F.2d 583, 588.) Plaintiff does not respond. Though not mentioned by either side on appeal, we observe the point is not without dispute among the federal courts of appeals. (See, e.g., *Ball v. Renner* (10th Cir. 1995) 54 F.3d 664.) Since plaintiff does not argue to the contrary, we will not belabor the point and will follow *Miller*. Because McNeal was an employee, she was not liable to plaintiff under title VII.

---

[10] McNeal says that, even if plaintiff had alleged a FEHA claim, it would fail due to plaintiff's failure to exhaust the internal grievance process he chose (*Page v. Los Angeles County Probation Dept.* (2004) 123 Cal.App.4th 1135, 1142–1143 [20 Cal.Rptr.3d 598]), and McNeal would be immunized for discretionary decisions under Government Code section 820.2. Plaintiff makes no response. We need not decide the matter.

■ As to the claim under 42 U.S.C. section 1983,[11] that statute " ' "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." ' [Citation.] . . . [I]t allows an action against state or local officials for intentional gender discrimination, including sexual harassment, as a violation of the right to 'the equal protection of the laws' protected under the Fourteenth Amendment to the federal Constitution. [Citations.]" (*County of Los Angeles v. Superior Court* (1999) 21 Cal.4th 292, 297 [87 Cal.Rptr.2d 441, 981 P.2d 68].) The two essential elements of a 42 U.S.C. section 1983 claim are " '(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.' [Citation.]" (*Irwin v. City of Hemet* (1994) 22 Cal.App.4th 507, 516 [27 Cal.Rptr.2d 433]; see also *Robbins v. Regents of University of California* (2005) 127 Cal.App.4th 653, 661 [25 Cal.Rptr.3d 851] [affirmed summary judgment due to lack of evidence of a constitutional violation].)

McNeal argues she showed her actions were legitimate, and plaintiff failed to show otherwise. She also argues she is entitled to absolute and qualified immunity, and plaintiff failed to exhaust his administrative remedies. We agree with McNeal that plaintiff failed to adduce admissible evidence that McNeal violated plaintiff's civil rights; we need not address the other grounds urged by McNeal.[12]

Plaintiff has presented no argument whatsoever—in the trial court or on appeal—with respect to the probability of success on the merits of a civil rights claim under 42 U.S.C. section 1983. He claims he is suing McNeal *not* for her official acts as a public employee, but for her private acts aiding and abetting a harasser outside the scope of her employment. He declines to

---

[11] Title 42 U.S.C. section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." (42 U.S.C. § 1983.)

[12] Though not acknowledged by the parties, there is authority that exhaustion of administrative remedies is not required as a prerequisite to bringing a civil rights action under 42 U.S.C. section 1983, including actions in California courts. (*Patsy v. Florida Board of Regents* (1982) 457 U.S. 496 [73 L.Ed.2d 172, 187, 102 S.Ct. 2557]; *White v. State of California* (1987) 195 Cal.App.3d 452, 466 [240 Cal.Rptr. 732].) We have no need to discuss application of that authority in a case such as this one, where the very essence of the complaint is a claimed defect in the first step of an internal remedy process, yet plaintiff failed to avail himself of the second step in the process.

address the federal authorities cited by McNeal, stating (in his discussion of immunity) that "the federal authorities cited by McNEAL pertain to constitutional deprivations and do not reach [plaintiff's] claims under FEHA."

We agree with McNeal that plaintiff has no evidence that McNeal violated his civil rights under 42 U.S.C. section 1983.

Thus, plaintiff's complaint alleged McNeal's denial of his grievances denied him his right to be free of sexual harassment. His complaint implied McNeal was biased.

McNeal submitted her own declaration attesting she is now retired, she did not harbor any unlawful prejudice against plaintiff, and she denied his grievances based on her review of the investigator's report, her belief it was adequate, her agreement with its conclusions, and absence of any reason for her to believe the investigator harbored an unlawful prejudice against plaintiff.

Plaintiff failed to submit any admissible evidence that McNeal did anything wrong. He submitted a declaration of Leslie Nopp containing conclusory statements attempting to disparage McNeal, but the trial court sustained evidentiary objections to those statements, and plaintiff does not challenge the evidentiary rulings on appeal. What remains of Nopp's declaration after the evidentiary rulings is the following:

As a senior superintendent, Nopp was part of the management team of the facilities services department. She regularly attended meetings at which McNeal and Tollefson and others were present. McNeal first came to the facilities services department as acting assistant director and later became director. She made Tollefson a senior superintendent; he helped McNeal do her job. In 2001, plaintiff told Nopp that Tollefson made him uncomfortable. As a senior superintendent, Nopp was familiar with the PPSM grievance procedures. In 2002, normally a midlevel manager would review the grievance. When plaintiff filed his grievance in 2002, Nopp noticed that McNeal took it upon herself to be the person who would review plaintiff's grievance concerning Tollefson. There were five senior superintendents besides Tollefson who could have reviewed the grievance. Nopp was aware of other grievances during this time period, but McNeal did not review those other grievances.

Nothing in this declaration supports maintenance of a civil rights action against McNeal.

On appeal, plaintiff says in his statement of facts that "[a]lthough McNEAL was not known to have reviewed any other grievance before, McNeal took it upon herself to be the person who would review [plaintiff's] grievance and thereby furthered TOLLEFSON's conduct . . . ." In the discussion portion of his brief, plaintiff says he established McNeal's bad faith because she "had never reviewed a grievance prior to reviewing [plaintiff's] grievance but made a special point of being in charge of [plaintiff's] grievances." However, plaintiff ignores the circumstance that the trial court sustained evidentiary objections to Nopp's statements that McNeal never reviewed any other grievance and to Nopp's conclusions suggesting bad faith by McNeal. That Nopp was aware of grievances unreviewed by McNeal does not support a civil rights action against McNeal.

We see no probability of plaintiff prevailing on the merits, because McNeal showed her actions were legitimate, and plaintiff failed to show by admissible evidence that she did anything wrong. We need not address McNeal's additional arguments regarding immunity[13] or failure to exhaust internal remedies.

We conclude McNeal was entitled to have the third cause of action stricken under section 425.16.

### IV. *Attorney's Fees*

█ As noted by McNeal, a defendant who prevails on a section 425.16 motion is entitled to an award of attorney's fees (§ 425.16, subd. (c)), including attorney's fees for the appeal (*Wilkerson v. Sullivan* (2002) 99 Cal.App.4th 443, 448–449 [121 Cal.Rptr.2d 275]).

We conclude McNeal's section 425.16 motion to strike the third cause of action should be granted, and she should be awarded her attorney's fees, including attorney's fees for this appeal. We accordingly reverse the trial court's order denying the motion and remand to the trial court for determination of the amount of attorney's fees.

---

[13] Thus, we do not have occasion to decide whether McNeal may enjoy immunity under the Eleventh Amendment to the federal Constitution. (See *Brunius v. Parrish* (2005) 132 Cal.App.4th 838 [34 Cal.Rptr.3d 55].)

## DISPOSITION

The November 22, 2005, order denying the Code of Civil Procedure section 425.16 motion is reversed. The trial court is directed to enter a new order granting the section 425.16 motion as to plaintiff's third cause of action and awarding attorney's fees to McNeal (including attorney's fees for this appeal) in an amount to be determined by the trial court upon remand. McNeal shall recover her costs on appeal. (Cal. Rules of Court, rule 8.276(a)(3).)

Hull, J., and Cantil-Sakauye, J., concurred.