Filed 10/23/14  Powers v. McCandless CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DEBORAH POWERS,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>TIMOTHY McCANDLESS et al.<br><br>        Defendants and Appellants. | A137568<br><br>(Contra Costa County<br>Super. Ct. No. C12-01591) |

Plaintiff Deborah Powers filed an action, arising from alleged sexual harassment during her employment, against Timothy McCandless; McCandless's law firm; and his office manager, Mike Hodges (collectively defendants).  The trial court denied McCandless's special motion to strike the complaint, brought pursuant to the provisions of California's strategic lawsuit against public participation (anti-SLAPP) statute (Code Civ. Proc., § 425.16).[1]  McCandless now appeals, contending that the trial court erred when it denied his motion because, first, McCandless's statements to Powers fell within the parameters of protected speech for purposes of section 425.16, subdivision (e)(4), and second, Powers did not show a probability of prevailing on the merits.  Because we conclude Powers's action did not arise from a protected activity, we shall affirm the trial court's order.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

1

On June 29, 2012, Powers filed a complaint for damages against McCandless; Timothy McCandless, a Law Corporation; Project Property One; and Mike Hodges, alleging causes of action for (1) sexual harassment, (2) sexual hostile work environment, (3) sex discrimination, (4) failure to prevent sexual harassment from occurring, (5) retaliation, (6) negligent supervision of employee, and (7) intentional infliction of emotional distress. Powers's complaint contained the following factual allegations: In January 2012, she was hired as a paralegal in McCandless's law office in Martinez. From January to March 2012, Hodges, who was McCandless's employee and Powers's supervisor, sexually harassed Powers at work.[2] Defendants did nothing to stop the harassment and, after Powers complained about the harassment, she was fired from her job in retaliation for her complaints. Powers suffered anxiety, depression, and emotional distress as a result of defendants' conduct.

On October 3, 2012, McCandless filed a motion to strike Powers's complaint, pursuant to section 425.16. In a declaration filed in support of the motion, McCandless stated, inter alia, the following: he hired Powers on January 18, 2012, as a paralegal in his law office, in which he worked as a sole practitioner. Hodges was his office manager. On March 10, 2012, Powers called McCandless and complained about an inappropriate text message she had received from Hodges. At McCandless's request, she forwarded to him Hodges's text message, which stated, " 'you must have been close to my heart, LOL, have a nice weekend, see you Monday.' " McCandless spoke with Hodges, who admitted that he had accidentally "pocket dialed" Powers with his cell phone. It was McCandless's impression that Hodges had been joking with Powers about having his cell phone in his shirt pocket when it accidentally dialed her cell phone.

McCandless, who had never before received any notification of inappropriate conduct on the part of Hodges towards Powers or any other employee in the Martinez office, instructed "Hodges to leave the Martinez office and return to the Southern

_____

[2] The complaint included several examples of the alleged sexual harassment.

California office" until McCandless could ascertain what had happened. A few days later, McCandless asked Powers to provide him with "a list of possible services she could provide to the office," which she did. Because Hodges had been sent away, McCandless was considering whether Powers had the skills to be the new office manager. Since Powers was hired, she had experienced personal difficulties that kept her from coming into the office as expected. In addition, her skills were not "up to what was represented by her" in that she was having difficulty preparing even simple documents.

On March 22, 2012, McCandless met with Powers "to discuss her problems with Defendant Hodges, her hours, the possibility of taking-over the position of the office manager, what hours she wanted to work, and her general availability." He suggested possible changes in her hours and also suggested that she "might be interested in opening the mail, filing documents in the filing cabinets, and meeting clients." Powers responded that another employee, Eric Santos, "could perform those tasks, that she was not interested in doing this type of work, and that she preferred to resign. During the entire discussion, there was no mention of inappropriate conduct by [Powers] as to Defendant Michael Hodges whatsoever." This discussion was overheard by Eric Santos, who was in the office at the time.

Hodges filed a declaration in support of McCandless's anti-SLAPP motion, in which he denied engaging in any form of sexual harassment of Powers. For example, he had accidentally dialed her cell phone, but that call and the follow-up text message were never intended to have any sexual connotations. Hodges also referred to Powers's personal difficulties that caused her to be out of the office more than expected and described her skills as being below what she had represented them to be.

Eric Santos also filed a declaration in support of McCandless's motion, in which he stated that he worked in McCandless's law office and had had regular contact with both Powers and Hodges. Although he had heard Hodges mention "that it was nice to have a beautiful and/or good looking staff, because the clients would feel comfortable with them," Santos did not consider that statement sexual harassment and had never

3

witnessed any conduct by Hodges that could reasonably be considered sexual harassment of Powers or anyone else.

On March 22, 2012, Santos overheard a meeting between McCandless and Powers, in which, inter alia, McCandless suggested Powers might be interested in opening the mail, filing documents, meeting clients, and acting as the office manager. Powers responded that Santos "could perform those tasks, that she was not interested in doing this type of work, and that she preferred to resign." Santos never heard Powers "mention anything about inappropriate conduct on the part of . . . Hodges"; she merely indicated her desire to quit. Nor had Santos ever heard McCandless express any negative words or hatred towards Powers.

Powers subsequently filed a declaration in support of her opposition to McCandless's anti-SLAPP motion, in which she stated that she worked as a paralegal in McCandless's law office from January 2012, to March 22, 2012. The declaration set forth various examples of how Hodges—who had hired, trained, and supervised her— sexually harassed her during her employment. On March 15, 2012, Powers complained to McCandless about the sexual harassment. Approximately one week later, on March 22, 2012, McCandless fired her. Before terminating her, McCandless told her that "he either had to let [her] go or let defendant Hodges go, and he wasn't letting defendant Hodges go." Powers had never been disciplined or given any indication that her employment was in jeopardy before she complained about Hodges sexually harassing her.

On December 12, 2012, the trial court adopted its tentative ruling denying McCandless's motion, as follows: "Defendant Timothy McCandless's motion to strike Plaintiff's Complaint pursuant to . . . [s]ection 425.16 is denied. Defendant Mike Hodges has not been served with the Complaint and therefore cannot move to strike it pursuant to the statute.[3] None of Defendant's conduct alleged in the Complaint falls within any of

---

[3] McCandless asserts that the trial court incorrectly stated in its ruling that Hodges had not been served with the complaint and also wrongly implied that Hodges was a

4

the four categories of First Amendment conduct identified in [s]ection 425.16[, subdivision] (e). Plaintiff's Complaint arises from sexual harassing conduct by Hodges, which is alleged to have been known about by McCandless, yet overlooked. There are no statements made by Defendant even alleged in the Complaint, let alone statements made by McCandless before an official proceeding or made in connection with an issue under consideration or review in an official proceeding, as required under the first two categories of conduct in [s]ection 425.16[, subdivisions] (e)(1), (2).

"As to statements made 'in a place open to the public or a public forum in connection with an issue of public interest,' the Complaint alleges no statements by McCandless at all, let alone ones in a place open to the public or a public forum in connection with an issue of public interest. Hodges's alleged sexual harassment of Plaintiff and McCandless's alleged permission of it occurred in a private workplace. See . . . [s]ection 425.16[, subdivision] (e)(3).

"Nor does the Complaint allege 'any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.' The 'right to petition' refers to the right to petition the government for the redress of grievances and is clearly not implicated in any of the conduct alleged by Hodges and McCandless [*sic*] in the Complaint. See . . . [s]ection 425.16[, subdivision] (e)(4)."

## DISCUSSION

### I. *The Anti-SLAPP Statute and Standard of Review*

Subdivision (b)(1) of section 425.16 provides that a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the

moving party as to the motion to strike. Neither of these alleged mistakes in any way affect our analysis of the issues raised on appeal.

5

plaintiff will prevail on the claim." Subdivision (e) of section 425.16 elaborates the types of acts within the purview of the anti-SLAPP law: "As used in this section, 'act in furtherance of a person's right to petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right to petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

"A two-step process is used for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity, that is, by demonstrating that the facts underlying the plaintiff's complaint fits one of the categories spelled out in section 425.16, subdivision (e). If the court finds that such a showing has been made, it must then determine the second step, whether the plaintiff has demonstrated a probability of prevailing on the claim. [Citation.]" (*Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 463 (*Hecimovich*), citing *Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.)

" 'The Legislature enacted section 425.16 to prevent and deter "lawsuits [SLAPPs] brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances." (§ 425.16, subd. (a).) Because these meritless lawsuits seek to deplete "the defendant's energy" and drain "his or her resources" [citation], the Legislature sought " 'to prevent SLAPPs by ending them early and without great cost to the SLAPP target' " [citation]. Section 425.16 therefore establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation.' [Citation.]"

(*Hecimovich*, *supra*, 203 Cal.App.4th at p. 463, quoting *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.) Finally, subdivision (a) of section 425.16 expressly mandates that the statute "shall be construed broadly."

We review the trial court's ruling on an anti-SLAPP motion de novo. (*Hecimovich*, *supra*, 203 Cal.App.4th at p. 464.)

## II. *Whether Powers's Cause of Action Arises from Protected Activity*

McCandless contends the conversation between him and Powers on March 22, 2012, in which she claims he fired her and he claims he offered her a promotion, constitutes protected speech on a public issue under the provisions of section 425.16, subdivision (e)(4).

In *World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc.* (*World Financial Group*) (2009) 172 Cal.App.4th 1561, the appellate court discussed subdivision (e)(4) of section 425.16, which applies to claims "arising from" speech or conduct " 'in furtherance of the exercise of the constitutional right of . . . free speech in connection with a public issue or an issue of public interest' ": " 'As courts applying the anti-SLAPP statute have recognized, the "arising from" requirement is not always easily met. [Citations.]' A claim does not arise from constitutionally protected activity simply because it is triggered by such activity or is filed after it occurs. [Citation.] Rather, the focus is on the substance of the lawsuit. '[T]he critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. [Citations.]' [Citation.] In other words, ' " 'the act underlying the plaintiff's cause' or 'the act which forms the basis for the plaintiff's cause of action' must *itself* have been an act in furtherance of the right of petition or free speech." [Citation.]' [Citation.] To determine whether the 'arising from' requirement is met, we look to 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b)(2) . . . .)" (*World Financial Group*, at pp. 1568-1569, citing, inter alia, *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 66; see also *Moriarty v. Laramar Management Corp.* (2014) 224 Cal.App.4th 125, 133-134.)

In *World Financial Group*, *supra*, 172 Cal.App.4th at page 1564, a corporation filed an action alleging that former employees had misappropriated trade secrets and utilized confidential information to solicit its associates and customers. The defendants argued that their conduct was protected activity because their actions involved " 'the pursuit of lawful employment' " and " 'workforce mobility and free competition,' " which they claimed were "matters 'of public interest and protected public policy.' " (*Id.* at p. 1569.) The appellate court rejected these arguments, explaining that, "[w]hile employee mobility and competition are undoubtedly issues of public interest when considered in the abstract, one could arguably identify a strong public interest in the vindication of any right for which there is a legal remedy. 'The fact that "a broad and amorphous public interest" can be connected to a specific dispute is not sufficient to meet the statutory requirements' of the anti-SLAPP statute. [Citation.] By focusing on society's general interest in the subject matter of the dispute instead of the specific speech or conduct upon which the complaint is based, defendants resort to the oft-rejected, so-called 'synedoche theory of public issue in the anti-SLAPP statute,' where '[t]he part [is considered] synonymous with the greater whole.' [Citation.] In evaluating the first prong of the anti-SLAPP statute, we must focus on 'the *specific nature of the speech* rather than the generalities that might be abstracted form it. [Citation.]' [Citation.]" (*Id.* at p. 1570.)

*World Financial Group* cited *Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (*Rivero*) (2003) 105 Cal.App.4th 913, 915-917, in which a janitorial supervisor at a public university filed an action against a union, alleging, inter alia, libel and slander, after the union published information about him in union publications and a petition. A panel of this Division addressed the "public issue," or "issue of public interest" requirement of section 425.16, subdivision (e)(4). We discussed various cases, noting that courts had broadly construed "public interest" " 'to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity. [Citations.]' [Citation.]" (*Rivero*, at p. 920.) Although none of the

8

cases defined "the precise boundaries of a public issue," in each case, "the subject statements either concerned a person or entity in the public eye [citations], conduct that could directly affect a large number of people beyond the direct participants [citations], or a topic of widespread public interest [citation]." (*Id*. at p .924.)

We observed that the union's statements concerned supervision of eight custodians by Rivero, "an individual who had previously received no public attention or media coverage. Moreover, the only individuals directly involved in and affected by the situation were Rivero and the eight custodians. Rivero's supervision of those eight individuals is hardly a matter of public interest." (*Rivero*, *supra*, 105 Cal.App.4th at p. 924.) The union nonetheless argued that whenever a person criticizes an unlawful workplace activity his or her statements concern a public issue because public policy favors such criticism. We disagreed, stating that, "if the Union were correct, discussion of nearly every workplace dispute would qualify as a matter of public interest. We conclude, instead, that unlawful workplace activity below some threshold level of significance is not an issue of public interest, even though it implicates a public policy." (*Ibid*.) We held that the union had not met its burden of establishing that its statements had exceeded that threshold level of significance. (*Ibid*.)

McCandless cites *Vergos v. McNeal* (2007) 146 Cal.App.4th 1387 (*Vergos*), which also involved a sexual harassment claim. *Vergos*, however, is distinguishable. An employee who claimed he had been sexually harassed at work brought a civil rights action against, among others, the manager who exercised discretion in hearing, processing, and deciding his grievances. (*Id*. at p. 1396.)[4] The appellate court explained that because one of the plaintiff's causes of action arose from the manager's denial of his

---

[4] The manager in *Vergos* had reviewed the plaintiff's grievances pursuant to personnel policies established by the Regents of the University of California, "which is a constitutional entity having quasi-judicial powers. [Citations.] The Regents 'have rulemaking and policymaking power in regard to the University; their policies and procedures have the force and effect of statute.' [Citation.] Statutory hearing procedures qualify as official proceedings authorized by law for [section] 425.16 purposes. [Citation.]" (*Vergos, supra,* 146 Cal.App.4th at p. 1396.)

9

grievances, the manager was entitled to relief under section 425.16, subdivision (e)(2) (a statement or writing made in connection with an issue under consideration or review in an official proceeding authorized by law), since hearing officers in an official proceeding deserve the protection of the anti-SLAPP statute. (*Vergos*, at pp. 1399-1400.)

Although his argument is not particularly clear, McCandless seems to believe that *Vergos* supports his position because, as a licensed attorney, he is an officer of the court, which means that his situation is analogous to the manager who decided the plaintiff's grievances in *Vergos*. Unlike in *Vergos*, however, Powers's action plainly did not arise from a statement made by McCandless in an official proceeding. *Vergos* is wholly inapplicable to the circumstances of this case, in which Powers's claims are based on alleged sexual harassment in a private law office and retaliation by McCandless for complaining about the harassment.[5]

In this case, as in *World Financial Group* and *Rivero*, the statements McCandless alleges constituted protected activity related solely to his supervision of two of his employees, Powers and Hodges. The fact that McCandless is a lawyer and that his alleged statements led in part to the filing of an action alleging sexual harassment, sex discrimination, and retaliation may touch on matters of " ' "a broad and amorphous public interest." ' " (*World Financial Group*, *supra*, 172 Cal.App.4th at p. 1570.) These circumstances cannot, however, transform the personal dispute between McCandless and Powers into a matter subject to the anti-SLAPP statute. (See *Rivero*, *supra*, 105 Cal.App.4th at p. 924.) The trial court correctly found that McCandless did not satisfy

---

[5] McCandless also cites *Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257, apparently for the same proposition: that his role as an attorney somehow transforms his conversation with Powers into a protected activity. (See *id*. at pp. 261-262 [in sex discrimination action, because "plaintiff's allegations were based on communications and statements defendants made 'in connection with an issue under consideration or review by a . . . judicial body . . .' (§ 425.16, subd. (e)(2)), namely defendants' attorney selection and litigation funding decisions" on behalf of a prepaid legal services plan, plaintiff's cause of action was based on protected activities].) Here, in contrast, McCandless's statements were not made in connection with any issue under consideration by a judicial body.

his burden of showing that Powers's claims arose from speech or conduct "in furtherance of the exercise of the constitutional right of . . . free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4); see *World Financial Group,* at pp. 1568, 1570.)

Because McCandless has not made the requisite showing pursuant to the first step of the anti-SLAPP analysis, we do not reach step two: whether Powers has demonstrated a probability of prevailing on her claim. (See *Hecimovich*, *supra*, 203 Cal.App.4th at p. 463.)

## DISPOSITION

The order denying the motion to strike the complaint pursuant to section 425.16 is affirmed. Costs on appeal are awarded to plaintiff Deborah Powers.

                        _____

                        Kline, P.J.

We concur:


_____

Richman, J.


_____

Stewart, J.