Filed 6/20/13  Gallant v. City of Alameda CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ANN MARIE GALLANT,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CITY OF ALAMEDA,<br><br>        Defendant and Appellant. | A133777<br><br>(Alameda County<br> Super. Ct. No. RG11590505) |

Defendant City of Alameda (the city) appeals from an order denying its special motion to strike the complaint of plaintiff Ann Marie Gallant as a strategic lawsuit against public participation pursuant to Code of Civil Procedure,[1] section 425.16 (hereafter referred to as SLAPP statute or anti-SLAPP statute).  The trial court determined that the complaint was not based on petitioning or free speech activity protected by section 425.16.  We disagree, and accordingly, we reverse and remand for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Ann Marie Gallant was formerly employed as interim city manager, pursuant to a written employment contract, for a minimum period of 24 months, commencing April 1, 2009 and ending March 31, 2011.  At a December 28, 2010, public meeting, the city council voted to "terminate" Gallant's contract.

---

[1]     All further unspecified statutory references are to the Code of Civil Procedure.

Under the complaint's causes of actions, designated "Labor Code § 1102.5(b)[2]"; Labor Code § 1102.5(c),[3]" "declaratory relief," and "breach of contract," Gallant alleged her employment had been "terminated" because (1) she refused to participate in illegal activity; and (2) she disclosed information pertaining to illegal activity to government agencies regarding a city council member. She also alleged the reported city council member had influenced two other council members to vote to terminate her contract. Gallant also alleged the city council's vote to terminate her contract violated section 2-2 of the city charter[4] and paragraph two of the employment contract.[5] Because Gallant's

---

[2]     Labor Code section 1102.5, section (b), reads: "An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."

[3]     Labor Code section 1102.5, section (c), reads: "An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of noncompliance with a state or federal rule or regulation."

[4]     Section 2-2 of the city charter reads: "(A) The following offices are hereby established and the incumbents thereof shall be appointed or removed by a vote of a majority of the full Council: City Manager, City Attorney, City Clerk. [¶] (B) During a period of ninety days immediately following the date of installation of any person newly elected to the Council at a regular or special municipal election or of any person newly appointed to the Council, the Council shall take no action, whether immediate or prospective, to remove, suspend, request the resignation of, or reduce the salary of, the incumbents in the aforementioned appointive offices."

[5]     Paragraph two of the contract reads: "Interim City Manager shall be hired as a limited term employee for a minimum period of twenty four (24) months, commencing April 1, 2009 and ending March 31, 2011, unless extended by mutual agreement. Such extensions shall be in 90 day increments, at the commencement of which the City council shall initiate its selection and recruitment procedure for the appointment of a permanent City Manager. [¶] Should the City council elect to delay its executive search for a City Manager, or elect not to select a candidate at the term of this agreement, this agreement shall automatically renew in 90 days increments as provided herein until such time as the City council has selected a permanent City Manager or until such time as the City provides the Interim City Manager with timely notice of non-renewal. The City council shall provide the Interim City Manager with written notice of non-renewal at least 90 days prior to the initial Termination Date or any succeeding Termination Date."

contract had not been properly terminated, she alleged the city was obligated to continue to pay her but it had stopped paying her on or about April 1, 2011. Gallant sought a declaration to resolve the parties' "actual controversy" relating to the validity of the city council's vote to terminate her contract on December 28, 2010, and damages for loss of pay and benefits, continuing to accrue until 90 days after the city complied with the termination terms of the employment contract.

After filing its answer, the city filed a special motion to strike the complaint, which was opposed by Gallant. After a hearing, the trial court issued a written order denying the city's special motion to strike the complaint. The court explained: "Plaintiff's claims arise from the City of Alameda's termination of her employment contract rather than any petitioning or free speech activity protected by the anti-SLAPP statute. Because the Court finds that the complaint does not arise from protected activity within the meaning of [section] 425.16, the Court need not reach the issue of whether plaintiff has made a sufficient showing on the merits of her claims." The city now timely appeals.

## DISCUSSION

Section 425.16, subdivision (b), states, in pertinent part: "(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." "[T]he word 'person' as used in section 425.16, subdivision (b) must be read to include a governmental entity." (*Bradbury v. Superior Court* (1996) 49 Cal.App.4th 1108, 1114.)

We review the trial court's order denying the city's special motion to strike under section 425.16 de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.) "[A] special motion to strike involves a two-part inquiry. First, the defendant must make a prima facie showing that a cause of action arises from an act in furtherance of his or her constitutional rights of petition or free speech in connection with a public issue.

3

[Citations.] If such a showing has been made, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the claim. [Citation.] If the plaintiff fails to carry that burden, the cause of action is 'subject to be stricken under the statute.' " (*Birkner v. Lam* (2007) 156 Cal.App.4th 275, 280-281.)

The SLAPP statute's protected activity is broadly defined to include "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) "[A] defendant moving to strike a cause of action arising from a statement made before, or in connection with an issue under consideration by, a legally authorized official proceeding need *not* separately demonstrate that the statement concerned an issue of public significance." (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123, fn. omitted.) Instead, "the statutory remedy afforded by section 425.16 extends to statements and writings of governmental entities and public officials on matters of public interest and concern that would fall within the scope of the statute if such statements were made by a private individual or entity." (*Vargas v. City of Salinas* (2009) 46 Cal.4th 1, 17.)

In analyzing the first prong of the section 425.16 analysis, "courts must be careful to distinguish allegations of conduct on which liability is to be based from allegations of motives for such conduct. '[C]auses of action do not arise from motives; they arise from acts.' [Citation.] 'The statute applies to claims "based on" or "arising from" statements or writings made in connection with protected speech or petitioning activities, regardless of any motive the defendant may have had in undertaking its activities, or the motive the plaintiff may be ascribing to the defendant's activities.' " (*People ex rel. Fire Ins.*

4

*Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 823.) Also, "[t]he anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability – and whether that activity constituted protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92 (*Navellier*).) Thus, regardless of the labeled causes of action, Gallant "cannot avoid operation of the anti-SLAPP statute by attempting through artifices of pleading, to characterize an action as a garden variety tort or contract claim when in fact the claim is predicated on protected speech or petitioning activity." (*Hylton v. Frank E. Rogozienski*, *Inc.* (2009) 177 Cal.App.4th 1264, 1271-1272.)

We agree with the city that the overarching premise of all of Gallant's causes of action is the termination of her employment contract, which is protected conduct under the anti-SLAPP statute as either a "written or oral statement or writing made before a legislative . . . proceeding, or any other official proceeding authorized by law," or a "written or oral statement or writing made in connection with an issue under consideration or review by a legislative . . . body, or any other official proceeding authorized by law." (§ 425.16, subds. (e)(1) & (2).) As Gallant concedes in her responsive brief, her retaliation and breach of contract claims, and request for declaratory relief, "would have no basis in the absence of" the city's alleged actions taken in connection with the termination of her employment *itself.* (*Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257, 270 (*Tuszynska*); cf. *Martin v. Inland Empire Utilities Agency* (2011) 198 Cal.App.4th 611, 624 (*Martin*) [court concluded gravamen of plaintiff's complaint was one of racial and retaliatory discrimination, not an attack on agency's chief executive officer or evaluations of plaintiff's performance as an employee]; *Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273, 1284 [court concluded gravamen of complaint was discrimination, not exercise of defendant's protected speech].) Thus, because the city's decision to terminate Gallant's employment constitutes "the gravamen, principal thrust, and core injury-producing conduct underlying [Gallant's] . . . claims"

(*Tuszynska, supra*, at p. 270), the lawsuit "falls squarely within the ambit of the anti-SLAPP statute's 'arising from' prong" (*Navellier, supra*, 29 Cal.4th at p. 90).[6]

Gallant's reliance on *McConnell v. Innovative Artists Talent & Literary Agency, Inc.* (2009) 175 Cal.App.4th 169, and *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, is misplaced as neither case concerns a municipality's protected activity as defined in section 425.16, subdivisions (e)(1) and (e)(2).[7] Additionally, the *McConnell* court's statement that "no one would suggest that a statement or writing firing an employee is protected First Amendment activity" (175 Cal.App.4th at p. 180), misconstrues the issue before us. "[T]he salient question in this case is not whether [defendant's] acts are protected as a matter of law under the First Amendment of the United States Constitution in some other context, but whether they fall within the statutory definition of conduct that the Legislature deemed appropriate for anti-SLAPP motions." (*Schaffer v. City and County of San Francisco* (2008) 168 Cal.App.4th 992, 1001 (*Schaffer*).) "The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' *as defined in the statute*." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon Enterprises*), italics added.)

---

[6] To avoid the application of the anti-SLAPP statute, Gallant asks us to consider the events before December 28, 2010, which explain that the motive for her termination was "retaliatory" unprotected conduct. But, Gallant confuses "a defendant's alleged injury-producing conduct with the unlawful motive the plaintiff is ascribing to that conduct." (*Tuszynska, supra,* 199 Cal.App.4th at p. 271.) " '[C]onduct alleged to constitute breach of contract may also come within constitutionally protected speech or petitioning.' " (*Id.* at p. 269.) Gallant is "positing a '*false dichotomy* between actions that target "the . . . performance of contractual obligations" and those that target "the exercise of the right of free speech." ' " (*Ibid.,* quoting *Navellier, supra*, 29 Cal.4th at p. 92.)

[7] In her opening brief, Gallant also refers us to *Kapler v. City of Alameda*, which was then pending review in Division One of this court. However, since the filing of the parties' briefs, our colleagues in Division One have decided *Kapler* in a nonpublished opinion. (Sept. 6, 2012, A133001) [nonpub. opin.].) Consequently, we do not rely on or further discuss this case. (Cal. Rules of Court, rules 8.1105(e)(1) & 8.1115(a).)

We also see no merit to Gallant's argument that the anti-SLAPP statue has not been applied to wrongful termination claims. " 'There is simply no authority for creating a categorical exception [from the anti-SLAPP law] for any particular type of claim . . . .' " (*People ex rel. Fire Ins. Exchange v. Anapol, supra,* 211 Cal.App.4th at p. 823.) " ' "Considering the purpose of the [anti-SLAPP] provision, expressly stated, the nature or form of the action is not what is critical but rather that it is against a person who has exercised certain rights" [citation]. "The Legislature recognized that 'all kinds of claims could achieve the objective of a SLAPP suit—to interfere with and burden the defendant's exercise of his or her rights.' " ' [Citation.] 'Nothing in the statue itself categorically excludes any particular type of action from its operation, and no court has the " 'power to rewrite the statute so as to make it conform to a presumed intention which is not expressed.' " ' [Citation.] Given these pronouncements, and the Legislature's express reminder that anti-SLAPP motions should be 'construed broadly' (§ 425.16, subd. (a)), we do not find room to except claims involving [wrongful termination] from the reach of the statute." (*Beach v. Harco National Ins. Co.* (2003) 110 Cal.App.4th 82, 91.)

In sum, we conclude the city met its burden of showing that the complaint's causes of action were based on "constitutional free speech and petitioning activity as *defined in the anti-SLAPP statute*[]," and "arose from activity protected *by the anti-SLAPP statute.*" (*Navellier, supra,* 29 Cal.4th at p. 95; italics added.) Whether the city's conduct "was wrongful" is a matter Gallant must "support in the context of the discharge of [her] burden to provide a prima facie showing of the merits of [her causes of action]." (*Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1367, disapproved on other grounds in *Equilon Enterprises, supra*, 29 Cal.4th at p. 68, fn. 5).

The parties ask us to address whether Gallant met the second prong of the section 426.15 analysis, namely, whether she met her burden of establishing a reasonable probability of prevailing on her claims by producing "evidence that would be admissible at trial." (*Integrated Healthcare Holdings, Inc. v. Fitzgibbons* (2006) 140 Cal.App.4th 515, 527.) However, the trial court did not rule on the city's numerous written objections

7

challenging Gallant's proffered evidence, the appellate record does not include Gallant's written responses, if any, to the city's evidentiary objections, and she has not specifically addressed the objections in her responsive brief. "Rulings on the evidentiary objections are necessary before the trial court or this court can determine whether [Gallant] has presented admissible evidence that demonstrates a probability of prevailing on the merits of her claims. . . . ' "Trial courts have a duty to rule on evidentiary objections." [Citation.] When that duty is not performed, appellate courts are left with the nebulous task of determining whether the ruling that was purportedly made was within the authority and discretion of the trial court and was correct.' " (*Martin, supra*, 198 Cal.App.4th at p. 630.) Given the procedural posture of this case, we conclude it is more appropriate to remand the matter to the trial court so that it may rule on the outstanding evidentiary and substantive issues in the first instance. (*Birkner v. Lam, supra*, 156 Cal.App.4th at p. 286.)

## DISPOSITION

The November 10, 2011, order denying defendant's special motion to strike is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion. The parties shall bear their respective costs on appeal.

_____
Jenkins, J.

We concur:

_____
McGuiness, P. J.

_____
Siggins, J.

8