Filed 5/13/14  Route 66 CPAs v. Glendora Courtyard CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| ROUTE 66 CPAs, LLC, | B247318 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. KC063544) |
| v. | |
| GLENDORA COURTYARD, LLC, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Salvatore T. Sirna, Judge.  Affirmed.

Mahoney & Soll, Richard A. Soll; LeClair Ryan, James C. Potepan and James C. Hildebrand for Plaintiff and Appellant.

John W. Melvin and Tatum R. Everhart for Defendant and Respondent.

————————————

Route 66 CPAs LLC (Route 66) appeals the trial court's denial of its special motion to strike Glendora Courtyard LLC's (Glendora) cross-complaint pursuant to Code of Civil Procedure section 425.16.[1] Route 66 and Glendora are co-owners of a commercial property governed by covenants, conditions, and restrictions (CC&R's) and became engaged in a dispute over Glendora's proposed improvements to the common area of the complex. After the parties reached an impasse, Route 66 sued Glendora seeking declaratory and injunctive relief to prevent the improvements and damages for various asserted breaches of the CC&R's. Glendora filed a cross-complaint seeking, among other things, indemnity and declaratory relief setting forth the parties' obligations under the CC&R's. In response, Route 66 filed a special motion to strike, asserting that Glendora's cross-complaint was directed at the petitioning activity of its complaint. The trial court denied Route 66's motion, finding that the gravamen of Glendora's cross-complaint was the parties' dispute concerning the proposed improvements and was not directed at Route 66's complaint. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### 1. *The Property and Ownership Interests of the Parties*

Both Route 66 and Glendora are California limited liability companies. The parties occupy three office building parcels located in Glendora at 2210, 2200, and 2220 East Route 66. Glendora owns Parcel 1 and Parcel 2. Parcel 1 and Parcel 2 are each improved with a two-story, 33,500 square foot office building. Route 66 owns Parcel 3, which consists of a one-story, 24,000 square foot office building. The three Parcels together are known as "Glendora Courtyard." Glendora Courtyard is not a commercial condominium because there is no separate association or board of directors. Each owner owns each Parcel in fee simple, with appurtenant rights and reciprocal easements to the beneficial use and enjoyment of the common area (asphalt parking lot, landscaping,

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

driveways, sidewalks, hardscape and a wrought iron fence).  Such rights and easements are set forth in the Glendora Courtyard's CC&R's.

The CC&R's provide at article 1.5 that the "'Common Area'" is, in relevant part, "the portions of the Project intended for the nonexclusive use by the Owners and their tenants, . . . in common with other users . . . including, without limitation, the entry driveways, parking areas, walkways, sidewalks, landscaping, and lighting with such area."  (Boldface omitted.)  Further, the CC&R's provide at article 1.6 that "'Common Area Expenses'" are defined as "all costs and expenses of every nature and kind as may be actually paid or incurred by Maintenance Director to operate, maintain, repair, replace, resurface, repave and insure (including appropriate reserves) the Common Area as determined by Maintenance Director, in its reasonable judgment, including, without limitation, all sums expended in connection with lighting, electricity, and any other utility costs."  (Boldface omitted.)  Glendora is the maintenance director of the Glendora Courtyard.

The "Majority-in-Interest" is defined at article 1.20 as the owner who owns at least two of the three parcels comprising the complex.  (Boldface omitted.)  Pursuant to the CC&R's, article 1.34, the parties pay their proportionate share of the common area expenses every month:  Route 66 is responsible for 42.95 percent, and Glendora is responsible for the remaining 57.05 percent.  Article 3.1 of the CC&R's provide that no improvements to the project may be made "without the prior written consent of a Majority-in-Interest, which consent shall not be unreasonably withheld or delayed . . . ."

During the period 2007 to 2011, Glendora Courtyard hired Cushman & Wakefield as the property management company.  During that time period, Route 66 paid between $3,200 to $3,350 per month for common area expenses, which Route 66 believed was a reasonable and fair charge.

2.      *Glendora's Proposed Improvements*

On October 11, 2011, Glendora, through its majority owner Marilena Marrelli, sent Route 66 a letter stating that Glendora wanted to make planned improvements to the

3

landscaping and courtyard, and attached a proposed budget showing estimated costs totaling $1,050,000, of which Route 66's share would be $450,975. The planned improvements included new landscaping, painting of the exterior of the buildings, and resurfacing of the parking lot. Glendora stressed that to remain competitive in the current rental market, "the buildings and project must be improved and modernized. [The buildings and project] must possess the presentation and characteristics of commercial space that potential tenants demand. Prudence dictates that we must respond to their concerns as soon as possible." On November 3, 2011, Route 66, through its corporate counsel, responded that the proposed changes were unacceptable and that the costs were excessive and unreasonable. Route 66 disputed that the proposed improvements were authorized or mandated by the CC&R's as common area expenses.

On January 16, 2012, Glendora, through its counsel, demanded that Route 66 agree to the improvements, and asserted that Glendora had the right to make the changes because it was the "Majority-in-Interest" holder as reflected in article 1.20 of the CC&R's. Glendora noted that Route 66 agreed that resurfacing of the parking area was a common area expense. Route 66 responded that the proposed improvements were not maintenance but substantial capital improvements that required the concurrence of all owners.

In late January 2012, Route 66 received the 2012 budget from Cushman and Wakefield which showed the proposed budget, including capital improvements of $1,371,819. Under the budget, Route 66's share of monthly expenses increased from approximately $3,350 per month to $52,055 per month. On March 6, 2012, Route 66 again advised Glendora that the proposed capital improvements were unacceptable and contested Glendora's interpretation of the parties' rights and duties under the CC&R's.

On March 9, 2012, Glendora again explained that the improvements were meant to retain and serve the level of tenants already in the Glendora Courtyard; Glendora believed if the improvements were not made, the complex might lose tenants, or the lack of improvements would make it difficult to lease the building. Glendora asserted that 60

4

percent of its tenants' leases were up for renewal.  The parties agreed to a meeting on March 26, 2012.  On March 28, 2012, Glendora wrote Route 66 to memorialize the March 26, 2012 meeting and stated that Route 66 had acknowledged that the primary motivation of Glendora was to retain existing tenants and acquire additional tenants at the complex, and that "[a]ny interference with our existing contractual relations or prospective economic advantage will be met with our complete and immediate legal response."  Glendora acknowledged that the parties had failed to reach a resolution of the matter.

On April 5, 2012, Route 66 responded and reiterated its objections to the proposed project and asserted its interpretation of the CC&R's in support of its position.  Route 66 maintained that article 2.2 of the CC&R's governed modification of the common area and that Route 66's consent was required for the proposed modifications.[2]  Route 66 asserted the proposed improvements were unnecessary and excessively costly.

*3.        Route 66's Complaint and Request for Preliminary Injunction*

On April 9, 2012, Route 66 filed its complaint seeking a preliminary and permanent injunction to enjoin Glendora's proposed improvements; declaratory relief, and alleging breach of the CC&R's, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty.

Simultaneously, Route 66 sought a preliminary injunction to prevent Glendora from altering the landscaping at the property, replacing gates or fences, installing a water fountain, and painting any portion of the property.  The trial court denied the injunction on May 1, 2012.

---

[2] Article 2.2 provides that in relevant part that "[n]o Owner or Permittee shall have the right to make changes with respect to Improvements located in the Common Area or the configuration of such Common Area without obtaining the consent of all of the other Owner(s) . . . , which consent shall not be unreasonably withheld."

### 4. *Glendora's Cross-Complaint*

On December 10, 2012, Glendora filed its cross-complaint seeking equitable indemnity, and alleging claims for interference with prospective economic advantage, breach of contract (CC&R's), breach of the covenant of good faith and fair dealing, breach of fiduciary duty, and declaratory relief. Glendora asserted that Route 66's failure to permit Glendora to make a much-needed overhaul of the common areas was damaging Glendora's business and causing diminution in value of Glendora's parcels. Glendora alleged that tenants were vacating the complex or threatening to vacate based upon the declining condition of the premises. Further, Glendora asserted that Route 66 had violated a "'stand-down'" agreement between the parties by its continuing refusal to permit Glendora to make the improvements. In addition, Route 66 had failed to pay its common area expenses for the past several months.

Glendora asserted that as maintenance director, it had the authority pursuant to articles 1.16, 2.1.5 (easement in favor of maintenance director), and 5.3 (governing maintenance and improvement of the project) of the CC&R's to incur the proposed costs to maintain the common areas, and had an easement for purposes of maintaining the common area. In particular, article 1.6 gave the maintenance director the authority to collect appropriate reserves for common area work; the maintenance director had the authority to replace and repave items in the common area; the maintenance director had reasonable business judgment authority, placing the burden on Route 66 to show that Glendora's choices were unreasonable; and the maintenance director had the authority to make capital improvements to the common area to reduce maintenance costs. In addition, Route 66's ability to veto any proposed improvements was limited by article 2.2 and article 3.1

### 5. *Route 66's Special Motion to Strike*

On December 20, 2012, Route 66 filed a special motion to strike pursuant to section 425.16, asserting that Glendora's cross-complaint arose from Route 66's statements or writings made in a judicial proceeding or in anticipation of litigation.

6

Route 66 contended that the gravamen of Glendora's cross-complaint was the series of letters written back and forth between the parties concerning Glendora's ability and authority to make the proposed capital improvements.

In support of its contentions, Route 66 relied on specific allegations of the cross-complaint that the cross-complaint arose out of Route 66's complaint:  the complaint and request for preliminary injunction were made to prevent Glendora from proceeding with the upgrades; although Glendora's counsel had reached a """"stand-down"""" agreement with Route 66, Route 66 continued in its prosecution of its complaint, and in doing so had prevented Glendora from proceeding with the improvements; and Route 66's position was not prosecuted in good faith.

In opposition, Glendora argued that, among other things, the gravamen of the complaint was that Route 66 unreasonably withheld its consent to the proposed improvements in violation of the CC&R's.  The letters between the parties and the complaint were evidence of Route 66's wrongful conduct, but were not the wrongful conduct at which Glendora's complaint was directed.  Furthermore, the cross-complaint was compulsory and as such was not the proper target of a motion to strike.  Finally, even if the gravamen of the cross-complaint was to chill protected speech, Glendora had a reasonable probability of prevailing on the merits because its claims rested upon Route 66's unreasonable withholding of consent to the proposed landscape improvements.

### 6. *Trial Court Ruling*

The trial court denied the motion, finding that the cross-complaint did not arise out the protected activity of Route 66's complaint but arose out of Route 66's failure to allow Glendora to make improvements on the property.

## DISCUSSION

Route 66 argues that Glendora's cross-complaint arises directly from Route 66's complaint in this action, and points to specific allegations in the cross-complaint to support its arguments.  Route 66 contends these types of allegations are not incidental to

7

Glendora's claims, but are the principal thrust of the cross-complaint—that Glendora continues to lose and has lost millions of dollars as a result of Route 66's complaint and as such are squarely within section 425.16. Further, although the trial court did not reach this issue, Glendora did not demonstrate a probably of prevailing on its claim because none of its causes of action had merit.

Known as the anti-SLAPP statute, section 425.16 provides that a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) Ruling on an anti-SLAPP motion is a two-step process. First, the trial court must determine whether the defendant has made a prima facie showing that the challenged cause of action arises from protected activity. (*People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 822.) If, and only if, the defendant makes that showing must the trial court proceed to the second step—determination of whether the plaintiff has shown a probability of prevailing on the claim. (*Ibid.*) The appellate court reviews a ruling on an anti-SLAPP motion de novo, using the same two-step process. (*Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1387; *Cabral v. Martins* (2009) 177 Cal.App.4th 471, 478.)

Subdivision (e) of section 425.16 delineates the type of speech or petitioning activity protected. Such acts include (1) written or oral statements "made before a legislative, executive, or judicial proceeding"; (2) written or oral statements "made in connection with an issue under consideration or review by a legislative, executive, or judicial body"; (3) written or oral statements "made in the place open to the public or in a public forum in connection with an issue of public interest"; or (4) "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) Courts have not precisely defined the boundaries of a cause of action "arising

8

from" such protected activity. (§ 425.16, subd. (b).) *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 explained that "the statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." *Navellier v. Sletten* (2002) 29 Cal.4th 82 cautioned that the "anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Id*. at p. 92.)

Whether the statute applies is determined from the "principal thrust" or gravamen of the plaintiff's claim. (*Martinez v. Metabolife Internat., Inc*. (2003) 113 Cal.App.4th 181, 188.) For this reason, the sequence in which actions are filed is not determinative of whether a lawsuit is a prohibited suit. The mere fact that a lawsuit was filed after the defendant engaged in protected activity does not establish the complaint arose from protected activity under the statute because a cause of action may be triggered by protected activity without arising from it. (*City of Cotati v. Cashman*, *supra*, 29 Cal.4th at pp. 77, 78.) In addition, when a cross-complainant presents a cause of action that is directed at both protected and nonprotected activities, the question presented is "whether the gravamen of the cause of action targets protected activity. [Citation.] If liability is not based on protected activity, the cause of action does not target the protected activity and is therefore not subject to the SLAPP statute. [Citations.]" (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1550.) "Stated differently, the question is whether the protected activity is merely an incidental part of the cause of action." (*City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 767.)

Route 66 points to specific allegations of the cross-complaint, in support of its argument: The cross-complaint alleges the complaint and request for preliminary injunction "were brought to prevent Glendora from proceeding with any repairs or

9

upgrades to the [Glendora Courtyard] property"; "Glendora's counsel previously reached a 'stand down' agreement with prior counsel for Route 66, but Route 66 nevertheless has continued to prosecute its Complaint against Glendora"; "Route 66's position has not been prosecuted in good faith"; "[b]ecause of Route 66's conduct, Glendora must now pursue this Cross-Complaint to recapture company losses and its lost return on investment"; "Glendora has currently been damaged, and seeks full and complete recovery from Route 66, for an estimated $35,000 per month in lost revenue, and a $5,033,334 diminution in value for its property," and "[s]hould the litigation continue on the current trajectory, Glendora would also be entitled to damages reflecting the creation of a permanent stigma on the property, and the loss of business good will"; and "[a]ll of these damages are the logical and foreseeable results of Route 66's actions" (namely, Route 66 prosecuting its complaint against Glendora).

Illustrative here is *McConnell v. Innovative Artists Talent & Literary Agency, Inc.* (2009) 175 Cal.App.4th 169, where two employees of a talent agency filed suit against their employer alleging that their employment contracts were illegal because they included, among other things, clauses that did not permit them to leave at will or take clients with them if they left. Thereafter, the employer sent the agents a letter modifying their job duties, and instructing them not to come into the office, contact clients, or use the company's email or computers. The agents took the position they had been constructively discharged because they were precluded from performing their jobs, and added claims for retaliation and wrongful discharge to their complaints. The employer filed a special motion to strike, arguing that the letter it sent constituted petitioning activity within the anti-SLAPP statute. (*Id*. at pp. 173–174.) The *McConnell* court disagreed, finding the acts underlying the agents' claims of retaliation and wrongful termination did not arise from the letter itself, but from the employer's conduct in modifying the agents' job duties and effectively precluding them from performing any of the ordinary activities of a talent agent. (*Id*. at p. 176.)

10

Here, unlike *McConnell* where the actual conduct was wrongful, Route 66 confuses a claim that is triggered by protected activity (its complaint) with a claim that arises from protected activity. Glendora's complaint is based upon the parties' dispute concerning their rights and obligations under the complex's CC&R's, their inability to come to an agreement concerning Glendora's proposed improvements, and Route 66's refusal to permit Glendora to proceed. While Route 66's complaint sought a declaration of the parties' rights and duties under the CC&R's, it also sought to stop Glendora from commencing the proposed improvements, which delay the cross-complaint asserted caused damages to Glendora, who was seeking to attract new tenants to the complex. As such, Glendora's cross-complaint was a compulsory cross-complaint because it arose from the same transaction, occurrence, or series of transactions or occurrences as the causes of action of the complaint. (*Align Technology, Inc. v. Tran* (2009) 179 Cal.App.4th 949, 965.) Thus, to the extent Glendora suffered any damages from Route 66's failure to consent to and participate in the proposed renovations, such claims arose from the dispute the parties had concerning their obligations under the CC&R's. Glendora's failure to plead such cross-claims could result in their forfeiture. (*AL Holding Co. v. O'Brien & Hicks, Inc.* (1999) 75 Cal.App.4th 1310, 1313–1314.)

Thus although properly brought as a compulsory cross-complaint, Glendora's cross-complaint suffers from the fact that many of the allegations in the cross-complaint appear to be directed specifically at the filing of Route 66's complaint (for example, the allegations that "Glendora's counsel previously reached a 'stand down' agreement with prior counsel for Route 66, but Route 66 . . . continued to *prosecute its Complaint* against Glendora"; "[b]ecause of Route 66's conduct, Glendora must now pursue this Cross-Complaint to recapture company losses and its lost return on investment"; "should the *litigation continue on the current trajectory*, Glendora would also be entitled to damages reflecting the creation of a permanent stigma on the property, and the loss of business good will"; and "[a]ll of these damages are the logical and foreseeable results of Route 66's actions" in *prosecuting its complaint against Glendora*.) (Italics added.)

11

However, a careful reading of the cross-complaint reveals that Glendora's claims are not specifically directed at Route 66's complaint, but are directed at Glendora's damages incurred based on Route 66's underlying conduct in refusing to undertake renovations that were assertedly proper under the CC&R's.  Thus, the trial court was correct in seeing through these allegations and concluding that the actual source of Glendora's cross-complaint was the equitable and monetary relief it sought based on the parties' dispute over their rights and duties under the CC&R's.  The protected activity alleged in Glendora's cross-complaint was incidental to the claims against Route 66.  (See *City of Colton v. Singletary*, *supra*, 206 Cal.App.4th at p. 767.)

As we conclude that Glendora's cross-complaint was not directed at Route 66's petitioning activity (its complaint), we need not consider whether Glendora had a reasonable probability of prevailing on the merits of its claims.

## DISPOSITION

The order is affirmed.  Respondent is to recover its costs on appeal.

NOT TO BE PUBLISHED.

JOHNSON, J.

We concur:

CHANEY, Acting P. J.

MILLER, J.[3]*

---

*  Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.